IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**ROBERT C. LEHMAN**                                                          **PLAINTIFF**

**v.**                                                   **CAUSE NO. 1:11CV284-LG-JMR**

**MICHAEL B. HOLLEMAN and**
**HOLLEMAN LAW FIRM, PLLC**                                **DEFENDANTS**

### ORDER GRANTING DEFENDANTS'
### MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** is the Motion for Summary Judgment [23] filed by Defendants Michael B. Holleman and Holleman Law Firm, PLLC, on August 3, 2012. The defendants argue that they are entitled to judgment as a matter of law as to Robert C. Lehman's defamation and emotional distress claims. They claim that the alleged defamatory statements at issue were subject to an absolute privilege. In the alternative, they argue that the statements were substantially true, were not published to a third party, and did not cause special harm. Lehman has not filed a response in opposition to the Motion. Upon reviewing the submissions of the parties and the applicable law, the Court finds that the Motion for Summary Judgment should be granted.

### FACTS

In his Complaint, Lehman alleges that Holleman, an attorney acting on behalf of the Holleman law firm, sent correspondence to Lehman's attorney, Frank Montague, that contained defamatory statements about Lehman. Lehman admitted that the correspondence was related to a lawsuit styled, *Mississippi*

*Transportation Commission v. Normand Children Diversified Class Trust, et al., Special Court of Eminent Domain*, Civil Action No. D24001-09-2073. Land owned by Lehman and the Normand Children Diversified Class Trust, Louis Normand, Jr., trustee, was taken by the Mississippi Transportation Commission, and an eminent domain proceeding was held in order to determine the just compensation owed to Lehman and the Trust. The Trust was represented by Holleman.

Lehman filed a lawsuit in Louisiana against Louis Normand, Jr., and Matthew Normand, claiming that he was deprived of profits earned by the business operated on the property at issue, as well as a Lis Pendens Notice in Mississippi concerning the property. The Trust filed a cross-claim against Lehman in the condemnation proceeding related to the property, claiming that Lehman had claimed an interest in the property that was greater than that to which he was entitled. The Trust also requested that the Lis Pendens Notices be expunged, since Lehman, by and through counsel, had wrongfully alleged that the property was the subject of Lehman's Louisiana lawsuit.

On July 14, 2010, Holleman sent a letter to Frank Montague, Lehman's attorney, extending a settlement offer to Lehman on behalf of the Trust. In the letter, Holleman made the following statement in an effort to encourage Lehman to accept the offer:

> In the Louisiana Action, Mr. Lehman "loaned" a complete stranger, Chadwick Harris, a disgruntled General Manager of my client, United Truck Group, $2,000.00 for what the witness believed was his favorable testimony and access to confidential information. When Mr. Harris testified in a deposition unfavorably to Mr. Lehman, Mr.

Lehman, on the record, demanded his $2,000.00 back.

(Def.'s Mot., Ex. A, ECF No. 23-1). The letter reflects that copies of the letter were also sent to Holleman's clients. (*Id.*)

At his deposition, Lehman explained that his son loaned $2000 to Harris. (Def.'s Mot., Ex. B at 70-72, ECF No. 23-2). He admitted that Montague represented him at the time that Holleman's letter was sent. (*Id.* at 95). He acknowledged that the purpose of the letter was to communicate a settlement offer. (*Id.* at 101). Lehman explained that he felt additional statements in Holleman's letter were defamatory, including statements that called Lehman foolish and accused him of maliciously filing a Lis Pendens Notice in Louisiana.[1] (*Id.* at 110). Lehman claims that Holleman's letter injured him, because it attacks his integrity. (*Id.* at 114). He does not know who may have seen the letter, aside from Montague, but he feels that it would harm his reputation if anyone saw it. (*Id.* at 115-16). Lehman, who is himself an attorney, is unaware of any clients or potential clients that he may have lost because of the letter. (*Id.* at 117-18). He is not claiming any economic losses in this lawsuit, but he claims that the letter was very upsetting to him. (*Id.* at 119). Lehman claimed that Holleman sent a similar letter to Judge Gaston H. Hewes, Jr., the judge presiding over the eminent domain proceeding, but Lehman did not reference the other letter in his Complaint, and he has not provided

---

[1] On June 4, 2010, Judge Gaston H. Hewes, Jr., held that the filing of the Lis Pendens Notice was malicious and that it had slandered the title to the property that was the subject of the eminent domain proceeding. (Def.'s Mot., Ex. H, ECF No. 23).

a copy of that alleged letter to the Court. (*Id.* at 115).

On October 19, 2007, Chadwick Harris, a former employee of Normand, executed a handwritten affidavit that provided:

> I, Chadwick Harris, attest without coercion, that approximately one month prior to this statement Robert Lehman, Esquire and his son Barrett traveled to Gulfport, MS to my residence . . . with two thousand dollars acquired from Mr. Lehman's son's bank account and gave it to me with the understanding that I testify against Louis J. Normand, Jr. and Matthew Normand.
>
> This payment was structured as a loan from his son so that the Bar (Louisiana Bar Association) and the Court hearing Lehman v. Normand, could not be traced. This loan was to mature only if I failed to testify as previously agreed.

(Def.'s Mot., Ex. J, ECF No. 23-10). At his deposition, Harris explained that the affidavit provided his opinions regarding the encounter with Lehman and his son and that Lehman never specifically asked him to testify in exchange for the funds. (Def.'s Mot., Ex. K, ECF No. 23-11). During cross-examination at Harris' deposition, Lehman presented a letter to Harris demanding repayment of the loan. (*Id.*) The demand letter was attached as an exhibit to the deposition. It stated that Lehman's son had loaned Harris the money, and that the loan was now delinquent. (Def.'s Mot., Ex. L, ECF No. 23-12).

## DISCUSSION

### I. STANDARD OF REVIEW

A motion for summary judgment may be filed by any party asserting that there is no genuine issue of material fact that the movant is entitled to prevail as a matter of law on any claim. Fed. R. Civ. P. 56. The movant bears the initial burden

of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Celotex Corp.*, 477 U.S. at 324-25. The non-movant may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986). A motion for summary judgment cannot be granted simply because there is no opposition. Ultimately, "[t]he movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed." *Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).

## II. CHOICE OF LAW

The two possible choices of law in this case are Louisiana law, since Lehman resides there, and Mississippi law, where Holleman resides and the events at issue occurred. In Mississippi, "[s]tatements made in connection with judicial proceedings, including pleadings, are, if in any way relevant to the subject matter of the action, absolutely privileged and immune from attack as defamation . . . ." *McCorkle v. McCorkle*, 811 So. 2d 258, 266 (¶18) (Miss. Ct. App. 2001). The presence of malice may prohibit the assertion of judicial privilege. *Id.* In

Louisiana, the privilege defense to defamation actions is qualified, only applying when the statement is material, is made with probable cause, and without malice. *Freeman v. Cooper*, 414 So. 2d 355, 359 (La. 1982). "[T]he privilege granted to an attorney is not a license to impugn the professional integrity of opposing counsel or the reputation of a litigant or witness." *Id*. Thus, a conflict of laws exists.

Choice of law analysis is a three step process: (1) the Court determines whether the conflicting laws are substantive or procedural; (2) the Court classifies the substantive area of law; and (3) the Court applies the appropriate standards for that area of law. *Hancock v. Watson*, 962 So. 2d 627, 629 (¶9) (Miss. Ct. App. 2007). The laws at issue in this case are substantive, and defamation and emotional distress claims are tort claims.

The Mississippi Courts utilize the most significant relationship test for determining the appropriate choice of law in tort actions. *Id*. at 629 ¶10. The law of the state with the most significant relationship to the occurrence and the parties governs. *Id*. The contacts to be considered while making this determination are: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. *Id*.

In the present case, Lehman alleges that his integrity was injured when Holleman sent a letter to Lehman's attorney in Mississippi, and there is no

evidence that anyone, other than Lehman, who lives outside of Mississippi ever saw the letter. Lehman may also claim that he suffered emotional distress in Louisiana. Thus, the alleged injury occurred in both Louisiana and Mississippi. The conduct causing the alleged injury occurred in Mississippi. Lehman's domicile is Louisiana, while Holleman's domicile and his business are located in Mississippi. The relationship between Lehman and Holleman is centered in Mississippi, where the eminent domain proceeding was held. When all of these factors are considered, Mississippi law applies to this lawsuit, since Mississippi has the most significant relationship to Lehman's claims.

## III. DEFAMATION

As explained previously, statements made in connection with judicial proceedings are immune from claims of defamation if the statements are in any way relevant to the subject matter of the judicial proceeding. *McCorkle*, 811 So. 2d at 266 (¶18). In his Complaint, Lehman admitted that the alleged defamatory statements were related to the Mississippi eminent domain proceeding. The letter containing the statements presented a settlement offer, and the statements were clearly made in an attempt to encourage Lehman to accept that offer. In addition, Lehman has not alleged that Holleman acted with malice. As a result, the Court finds that Holleman's statements are subject to an absolute privilege, and Lehman cannot assert a defamation claim based on those statements.

## IV. EMOTIONAL DISTRESS

Lehman has asserted negligent and intentional infliction of emotional distress claims against the defendants. Any claim for infliction of emotional distress based upon defamation necessarily requires a successful claim of defamation. *See Hudson v. Palmer*, 977 So. 2d 369, 385 (¶46) (Miss. Ct. App. 2007). Furthermore, the Mississippi courts have not recognized a claim for negligent infliction of emotional distress based on defamation, and Lehman has not alleged conduct that would support a claim of intentional infliction of emotional distress. *See Pierce v. The Clarion Ledger*, 433 F. Supp. 2d 754, 760 (S.D. Miss. 2006); *Weible v. Univ. of S. Miss.*, 89 So. 3d 51, 64 (¶41) (Miss. Ct. App. 2011) ("In order to prevail on a claim for intentional infliction of emotional distress, the severity of the conduct at issue must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'") For these reasons, the defendants are entitled to judgment as a matter of law as to Lehman's emotional distress claims.

## CONCLUSION

For the foregoing reasons, the Court finds that the defendants are entitled to judgment as a matter of law.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion for Summary Judgment [23] filed by Defendants Michael B. Holleman and Holleman Law Firm, PLLC, is **GRANTED**. A separate judgment will be entered in

accordance with Fed. R. Civ. P. 58.

**SO ORDERED AND ADJUDGED** this the 10th day of September, 2012.

*s/ Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE